IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| TIMOTHY LAMAR JONES, | : | |
|---|---|---|
| Plaintiff, | : | |
| v. | : | No. 4:18-cv-00135-CDL-MSH |
| SHERIFF DONNA TOMPKINS, *et al.*, | : | |
| Defendants. | : | |

## ORDER OF DISMISSAL

Plaintiff Timothy Lamar Jones, a pretrial detainee in the Muscogee County Jail in Columbus, Georgia, filed a *pro se* civil rights complaint under 42 U.S.C. § 1983. Compl., ECF No. 1. Thereafter, Plaintiff was granted leave to proceed *in forma pauperis*, and his complaint underwent a preliminary review. Order to Recast Compl., ECF No. 8. In that review, the United States Magistrate Judge found that Plaintiff had failed to state a claim but gave Plaintiff an opportunity to recast his complaint to address the deficiencies therein. *Id.* Plaintiff has now filed a recast complaint, which is also subject to a preliminary review. Recast Compl., ECF No. 9. Having reviewed the recast complaint, the Court now finds that Plaintiff has again failed to state a claim upon which relief may be granted. As a result, his complaint is **DISMISSED WITHOUT PREJUDICE**.

**I. Preliminary Review of Plaintiff's Complaint**

Because Plaintiff is a prisoner "seeking redress from a governmental entity or [an] officer or employee of a governmental entity," the Court is required to conduct a

preliminary review of Plaintiff's complaint. See 28 U.S.C. § 1915A(a) (requiring the screening of prisoner cases) & 28 U.S.C. § 1915(e) (regarding *in forma pauperis* proceedings). When performing this review, the district court must accept all factual allegations in the complaint as true. *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004). *Pro se* pleadings are also "held to a less stringent standard than pleadings drafted by attorneys," and thus, *pro se* claims are "liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted). The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* (internal quotation marks omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (first alteration in original). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of

2

a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under §1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

A. Plaintiff's Complaint

In his recast complaint, Plaintiff alleges that he has diabetes and sometimes develops blood clots in his lungs.[1] Recast Compl. 5, ECF No. 9. Thus, when Plaintiff arrived at the Muscogee County Jail, he told the intake nurse about his condition and the medications that he was taking, including medformin for diabetes and a blood thinner called caumadin for the blood clots. *Id.* Because of the caumadin, it is necessary for Plaintiff to have his blood checked regularly. *Id.* Defendants Correct Care Solution, the prison's healthcare provider; Correct Care Solutions Manager Pout Morris; Chief Physician Dr. Parks; and Service Professional Dr. Petty, however, have failed to routinely check Plaintiff's blood, resulting in damage to Plaintiff's health. *Id.*

---

[1]In the order to recast his complaint, Plaintiff was cautioned that the recast complaint would take the place of the original complaint, such that the Court would not look back to the original complaint in assessing whether Plaintiff had stated a claim for relief. Order to Recast Compl. 8, ECF No. 8. Thus, only the recast complaint is considered in this order.

In particular, around June 6, 2018, Plaintiff began to feel ill, with continuous headaches and pain in his leg. *Id.* at 6. At some point, Plaintiff beat on the window of his cell to try to get an officer's attention, but Plaintiff was ignored. *Id.* Later, at pill call, Plaintiff informed an officer and the pill call nurse, but Plaintiff was not taken to medical and no one checked on him after that. *Id.*

Around 3:30 a.m. on June 8, 2018, Plaintiff was supposed to get up to take a dose of medformin, but when he stood up, he felt dizzy and fell back on the bed. *Id.* Plaintiff's cellmates tried to alert officers in the area by beating on the window of the cell, but none of the officers responded. *Id.* Plaintiff therefore tried to walk down the stairs by himself, but he fell most of the way down, hitting his face on the rail. *Id.* Thereafter, an officer came by to give insulin shots and observed Plaintiff's condition. *Id.* Plaintiff asserts that an officer should have responded sooner and that inmates should not have to beat on the windows to get the officers' attention, particularly because officers sometimes get irritated and ignore the beating. *Id.* Additionally, some officers will put inmates in lockdown for beating on the windows. *Id.*

Plaintiff adds that the jail is dangerous because there are no cameras and the call buttons in the cells have been disconnected. *Id.* at 7. Moreover, the jail is overcrowded, has a lot of gang activity, houses violent and murderous criminals, and has a poor classification system. *Id.* In this regard, Plaintiff asserts that Defendants Muscogee County and Sheriff Donna Tompkins have failed to provide safe and secure conditions of confinement for Plaintiff and other inmates. *Id.*

Returning to the events of June 8, Plaintiff alleges that when officers saw him, they

4

helped him up and took him to medical. *Id.* After three days in medical at the jail, Plaintiff began to get worse and was taken to the Emergency Room at Piedmont Medical Center. *Id.* At the hospital, Plaintiff was admitted to intensive care, where the doctor told Plaintiff that his blood tests indicated that the medical staff at the Muscogee County Jail was treating Plaintiff with too much caumadin without properly monitoring Plaintiff's blood levels, which put Plaintiff's life in danger. *Id.* at 7-8.

Plaintiff asserts that his treatment was the result of deliberate indifference to a serious medical need. *Id.* at 8. With regard to the named defendants, Plaintiff asserts that Correct Care Solutions is a health maintenance organization with an official policy to provide continuous, effective, and quality healthcare services, but that it failed to provide such services in his case. *Id.* Additionally, Plaintiff asserts that Correct Care violated Georgia law, as well as the Eighth and Fourteenth Amendments, with regard to his treatment.[2] *Id.*

    A. <u>Deliberate Indifference to a Serious Medical Need</u>

Plaintiff asserts that Defendants Correct Care Solution, Pout Morris, Dr. Parks, and Dr. Petty were deliberately indifferent to his serious medical need insofar as they failed to properly monitor his blood while he was being given caumadin. *Id.* at 5. A prisoner seeking to state a claim for deliberate indifference to a serious medical need must allege facts to show that his medical need was objectively serious and that the defendant was

---

[2]Because Plaintiff's federal claims are dismissed for the reasons discussed below, the Court declines to exercise supplemental jurisdiction to consider any potential state law claims. *See* 28 U.S.C. § 1367(c)(3).

5

deliberately indifferent to that need.[3] *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation marks and citation omitted). Further, the condition must be one that would pose a "substantial risk of serious harm" if left unattended. *Farrow*, 40 F.3d at 1243. An official acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health and safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Here, Plaintiff asserts facts showing that he had a serious medical need insofar as he alleges that he had blood clots, which required him to take caumadin, and that the administration of caumadin further required that his blood be monitored to ensure that he did not become ill as a result of the medicine. Plaintiff also asserts facts showing that this condition posed a substantial risk of harm insofar as the failure to monitor his blood caused him to become sick, requiring treatment in a hospital.

The remaining question, then, is whether Plaintiff has alleged facts showing that any of the named defendants acted with deliberate indifference to Plaintiff's serious medical

---

[3]Generally, deliberate indifference claims brought by prisoners who are in prison pursuant to a conviction are governed by the Eighth Amendment, which prohibits cruel and unusual punishment. *See Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). In cases such as this one, where the plaintiff is a pretrial detainee, these claims are actually governed by the Fourteenth Amendment Due Process Clause. *See id.* Regardless, "the standards under the Fourteenth Amendment are identical to those under the Eighth." *Id.* Thus, the Eighth Amendment cases cited herein apply equally to Plaintiff's claims.

6

need. In this regard, Plaintiff only makes a general statement that Correct Care, Morris, Parks, and Petty failed to properly monitor his blood while he was taking the caumadin. Plaintiff does not, however, allege any specific facts showing that any of the individual defendants, Morris, Parks, or Petty, was actually directly involved with his care, such that they were aware of defendant's condition or the need for his blood to be monitored. Instead, Plaintiff asserts only that he told a nurse about his condition and what medications he was taking and that, when he became ill, he talked to an officer and the pill call nurse. Plaintiff does not identify any occasion on which he spoke to Morris, Parks, or Perry, nor does he assert any other allegations that would show that any of these defendants was involved in his care or treatment.

Because Plaintiff has only made a conclusory allegation that these defendants failed to monitor his blood in accordance with the appropriate standard of care, without providing any specific allegations demonstrating that these defendants were personally involved with his treatment or care, such that they would have known about his condition and deliberately disregarded it, he has failed to state a claim against them. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statement" are not sufficient to state a claim for relief under § 1983."). Plaintiff's deliberate indifference claims against defendants Morris, Parks, and Perry are therefore **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

As to Correct Care Solutions, to state a claim against a prison's medical services contractor, a prisoner must allege that the contractor had a custom or policy that caused the constitutional violation at issue. *Massey v. Montgomery Cty. Detention Facility*, 646 F.

App'x 777, 780 (11th Cir. 2016) (per curiam) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). In this regard, Plaintiff alleges that Correct Care has a policy to provide "continuous, effective, and quality healthcare service," but that its employees failed to provide such service in his case. Thus, Plaintiff does not allege that Correct Care had a policy that caused the deliberate indifference. To the contrary, he alleges that Correct Care had a policy that should have led to him being provided with appropriate care, but that the policy was not followed in this instance. Accordingly, he has not stated a claim against Correct Care, and this claim is therefore also **DISMISSED WITHOUT PREJUDICE**.

Finally, it is not clear whether Plaintiff is also intending to state a deliberate indifference to a serious medical need claim against Defendants Muscogee County and Sheriff Donna Tompkins. Regardless, he makes no allegations that Tompkins was involved in his treatment or otherwise knew about, and was deliberately indifferent to, his condition. Thus, he has not stated a claim against her.

As to Muscogee County, to state a claim against a municipality, a plaintiff must assert facts showing that the municipality had a "policy or custom" of deliberate indifference that led to the constitutional violations. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "Because municipalities rarely have an official policy that endorses a constitutional violation," a plaintiff generally must show that the municipality had "a custom or practice" of allowing the violation, and that the custom or practice caused the violation. *Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011). As with Correct Care, Plaintiff has not identified any policy or custom held by Muscogee County

that led to the alleged constitutional violations. Accordingly, any deliberate indifference to a serious medical need claim against Sheriff Tompkins and Muscogee County is also **DISMISSED WITHOUT PREJUDICE**.

      2.   <u>Deliberate Indifference to Health and Safety</u>

Plaintiff also alleges facts that suggest a claim for deliberate indifference to safety insofar as he asserts that the conditions in the jail are unsafe because inmates have to beat on the windows to get the attention of officers and that officers sometimes ignore the inmates or punish them for beating on the windows. Plaintiff also notes that there are no cameras or call buttons in the cells and asserts that the jail is overcrowded, has a lot of gang activity, houses violent and murderous criminals, and does a poor job of classifying inmates. On this claim, Plaintiff asserts that Muscogee County and Sheriff Tompkins have failed to provide safe conditions.

To state a constitutional claim for exposure to unsafe conditions, a prisoner must allege facts to show the existence of a prison condition that is extreme and poses an unreasonable risk the prisoner's health or safety. *See Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). Additionally, the prisoner must allege facts to show that the defendant acted with deliberate indifference to the condition, which requires that the defendant knew that an excessive risk to health or safety existed, but disregarded that risk. *Id.* at 1289-90. A prisoner seeking prospective injunctive relief with regard to an unsafe prison condition is not required to await an actual injury before seeking such relief. *See Farmer v. Brennan*, 511 U.S. 825, 845 (1994) (*quoting Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923) (noting that "an inmate seeking an injunction on the ground that there

9

is a contemporary violation of a nature likely to continue . . . must adequately plead such a violation"), and *Helling v. McKinney*, 509 U.S. 25, 33-34 (1993).

Here, Plaintiff's assertions that the jail is overcrowded, has gang activity, houses criminals, and does a poor job of classifying inmates are generalized statements without specific factual allegations to demonstrate that these conditions pose any particular unreasonable risk to Plaintiff's health and safety. Thus, these assertions are insufficient to support an Eighth Amendment claim for exposure to unsafe conditions. *See Iqbal*, 556 U.S. at 678.

With regard to Plaintiff's assertion that his safety is put at risk because inmates have to beat on the windows of the cells to get the officers' attention in case of an emergency, it is not clear that Plaintiff has sufficiently alleged facts to show an unreasonable risk to his health or safety. In favor of such a claim, Plaintiff asserts that he has health problems and that he was left unattended for a period of time when he was ill because officers failed to respond to inmates beating on the windows. Thus, this suggests that, if Plaintiff is left alone without any way to call for help for extended periods of time, there could potentially be a risk to Plaintiff's health. On the other hand, Plaintiff does not allege facts showing how long he is left alone at a time, such as by explaining how often officers make regular checks on the cells. As a result, it is not entirely clear that Plaintiff has sufficiently alleged that the setup of the jail, and particularly the lack of a more efficient way to get the officers' attention, poses an unreasonable risk to Plaintiff's health or safety. *See Chandler*, 379 F.3d at 1289.

Regardless, even assuming that Plaintiff has sufficiently alleged that the jail's setup

creates an unreasonable risk of harm, Plaintiff does not allege any facts to show that the named defendants to this claim, Sheriff Tompkins or Muscogee County, are liable. In particular, Plaintiff does not allege facts showing that Sheriff Tompkins is aware that officers do not always respond or that the setup of the jail otherwise creates a risk of harm to the inmates in general or Plaintiff in particular. Thus, he has not asserted facts to show the Sheriff Tompkins was deliberately indifferent to Plaintiff's health and safety. *See id.* at 1289-90.

As to Muscogee County, Plaintiff does not allege the existence of a custom or practice of Muscogee County that causes Plaintiff to be exposed to an unreasonable risk of harm. *See Craig*, 643 F.3d at 1310. Accordingly, Plaintiff has not stated a claim in this regard, and his claim of deliberate indifference to safety against Sheriff Tompkins and Muscogee County is also **DISMISSED WITHOUT PREJUDICE**.

**II. Conclusion**

Thus, for the reasons discussed herein, Plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim upon which relief may be granted.

**SO ORDERED**, this 16th day of January, 2019.

s/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA